Pelinkovic, et al. Good afternoon, Mr. Kefafian. Is that how you pronounce it? Yes, Your Honor. Good morning. You have two minutes reserved for rebuttal, and whenever you're ready, you can begin. Thank you, Your Honor. My name is Martin Kefafian. I represent the appellant, Matthew Tesla. Mr. Tesla is here in the courtroom with us today. Mr. Tesla brought a suit in state court asserting state court claims. Shortly thereafter, the defendant removed the case to federal court on diversity grounds. The defendant then moved to dismiss under 12b-6. The defendant did not introduce extrinsic documentary evidence or judicial admissions or anything outside the pleadings. The trial court granted the motion to dismiss, dismissing with prejudice, and in doing so, departed from the deference required under 12b-6. The trial court granted a number of inferences in the moving party's favor, not in the plaintiff's favor, essentially made findings of fact. There are a number of elements I think you would agree that, either whether it be for joint ventures or ventures or partnerships, which are equivalent under New York law, correct? Yes, Your Honor. That you would have to have enough allegations in there to plausibly assert all of the elements. We've said these are elements. These aren't factors. We've specifically said these are elements. So the district court, I think for a number of them, and we can go through them, said there just aren't enough allegations establishing an intent to be joint ventures or joint control or sharing of profit and losses. So can you point us to the allegations that would plausibly suggest each of those elements? So first, Judge, I want to start with the intent factor. And we have a point in our reply brief about Rule 9 that alleging intent for a fraud claim, for example, is sufficient to satisfy the particularity standard under Rule 9b. We think under Rule 8a, just alleging that the parties intended to be partners is sufficient to carry that burden. That said, there are allegations in the complaint that speak to how the parties commingled their efforts and their property, which is — Your point is your client didn't contribute any capital at all, right? So we disagree with that. Mr. Tresla incurred expenses in connection with the partnership. He incurred travel expenses, came to New York, paid for an Airbnb. It's true that the capital of the partnership was initially provided by the defendant, by the defendant, Mr. Palachowicz, but — What do you mean initially? Throughout, right? Yes, Your Honor, throughout. Other than this plane trip, your client contributed nothing. Nothing. I know he said he gave some general advice at the beginning, but no money, right? Well, he also made a promise to make good on any losses, Judge, and that means something. I think there's a — in going back and reading — What was his joint control? What was his degree of joint control? What are the allegations that he had some degree of joint control over the venture? Well, he was selecting the wallets, the platforms, the particular currency that was to be invested in. He was the one exercising control over those decisions. What giving advice on those things did he say? There's nothing in the complaint that suggests that they were required, right? That Mr. Palachowicz was required to accept any advice he was giving, right? I think it says he selected them, Judge. I think he — the allegation is that the plaintiff selected the particular assets that were invested upon by the partnership, and that was the condition for Mr. Tesla promising to backstop any losses that this investment would have sustained. What does that mean? What does that mean, backstop? What does that mean? Well, we understand there's a — some question as to what that means in the context of this complaint. We pointed to — But that's important, right? If you're trying to causally establish the sharing of profits and losses, saying he, quote-unquote, backstopped it doesn't tell the court anything. Backstop could be a million things. Well, he — there was a telephone — the allegation is that there was a telephone conversation in which a statement was made that if there are losses to the principle of the investment, then Mr. Tesla was going to make Mr. Palachowicz whole with respect to that loss. And I want to sort of parse out an issue that I think has come up throughout the briefing, which is, you know, a partnership can be formed by a written agreement, an oral agreement, or by a course of conduct. Our allegations here are that there was an oral agreement to form a partnership. And a lot of the pushback we hear is that, well, Mr. Tesla never in fact came through with that backstop obligation because there were never any losses. And that would be material to determining whether or not there was a partnership formed if our allegation was that the partnership was formed as a result of a course of conduct. But our claim is that there was a discussion, an oral agreement, to form the partnership. And because of that, whether or not Mr. Tesla ultimately provided that backstop is really a performance issue, not a formation issue. Is it true, they say that in your complaint, I think it's true, correct me if I'm wrong, you allege that there was this trip to New York and there was some advice about cold storage, but they say then there is not a single allegation for the next three and a half years that your client had anything to do with the operation of this enterprise. That, you know, there's nothing, absolutely nothing. So the complaint is silent as to what happens between 2021 and 2024. I think the defendants go further and say, in fact, nothing happened and that we disagree with. You have to, again, plausibly assert all the different elements. So how can you do that when you allege nothing your client did for three and a half years? I think that speaks to the strategy of the investment judge. I'm going to use an analogy of Mickey Mantle rookie cards. If these gentlemen who were involved in the sports industry together had gone out and agreed to invest in Mickey Mantle rookie cards and had a buy-and-hold strategy, which is what is alleged here, then I don't think there would be any question that that would be sufficient to, you know, state a business relationship that would arise today. Are the two people putting money in together to get the Mickey Mantle cards or is one putting nothing in? Well, one is contributing the initial capital and the other is promising to make good on any losses. That's enough. We think that's an enforceable promise. All right. To the extent the court disagrees with that there are sufficient facts alleged, the plaintiff is asking that the with prejudice dismissal be vacated so that he has an opportunity to provide the further detail as to the meaning of what is alleged as to what happened between 2021 and 2024. This was the first time a court had reviewed the sufficiency of the pleadings and plaintiff requests the opportunity to supplement as appropriate. Thank you, Your Honor. Thank you. All right. We'll hear from Ms. Nadeau. Good afternoon, Your Honors. May it please the Court. Amy Oh on behalf of the defendant appellees. You know, we respectfully request that this Court affirm the district court's well-reasoned dismissal with prejudice of plaintiff appellants like an amended complaint. You know, this appeal seeks to revive a meritless action premised entirely on the unfounded assertion that the parties formed an oral partnership that entitles plaintiff appellant to half of the gains of Mr. Pelinkovic's personal cryptocurrency investments. You know, these were investments made with Mr. Pelinkovic's own money, in his own name, and without any capital contribution from Mr. Tesla at all. You know, critically, Tesla admits that he made zero capital contribution. He was only to provide his expertise and allegedly agreed to backstop any losses. But, you know, the sole trip that he allegedly took to New York involving setting up cold storage for assets that Mr. Pelinkovic had already purchased with his own funds. The second amended complaint is completely devoid of any facts concerning any communications or collaboration between the parties as to what cryptocurrencies were actually put into cold storage. And then it's devoid of facts of communication or collaboration also between the parties for over three and a half years. I understand, you know, plaintiff appellant's attorney made the comparison to Mickey Mantle cards, but, you know, cryptocurrency is a newly developed area, right? There's a ton of new cryptocurrencies popping up every day. It's implausible that they had zero conversations about the cryptocurrencies that were invested in. And also the second amended complaint does not point to a single cryptocurrency that was invested in, whether that was bitcoin, altcoins, meme coins or anything like that. I mean, if it's implausible, why not give him a chance to put his proof forward in some way or to amend his complaint? To that question, your honor, we would say that plaintiff appellant already had an opportunity to amend his complaint. They had the benefit of our initial motion to dismiss at the southern district level, where they could see all these deficiencies, including some of the arguments that I'm making right now, that the complaint doesn't list or identify any of the cryptocurrencies that were purchased. And when they amended, they still failed to, you know, properly or plausibly allege a claim here. You know, it's not just one single element that they failed to raise or failed to reach for the partnership claim. There's even under a totality of the circumstances analysis, you know, they virtually fell in every factor there. I think, you know, your honors ask these questions and I think it's appropriate to bring them up again that there's a lack of intent here. The definition of backstop is unclear. And also, there's no joint control. At all times, my client maintained all the cryptocurrencies, what cryptocurrencies. And in fact, there's the fact in their second amended complaint that my client entered into an undisclosed leverage position without their knowledge. That proves that his client or Mr. Tesla had no control over the cryptocurrencies. And I think, you know, for those reasons, the district court got it right. You know, I think the district court aptly found that the many of the allegations that were included in the second amended complaint or the first amended complaint actually undermined rather than enhanced the plaintiff's claims here. And I don't see how any additional amendment here would cure the fundamental plaintiff deficiencies. I know I have more time. Even if there was not a plausible claim for a partnership or joint venture, we potentially have a claim for unjust enrichment for flying to New York and providing whatever initial advice that he provided. Sure, I can definitely address that, your honor. I think, you know, the district court here correctly found that he failed to establish a clear and unambiguous promise. That's required. But there's also, you know, no basis for unjust enrichment independent of the failed partnership partnership claim. You know, it's there's no doubt that this is duplicative of the other causes of action here. But I think at the end of the day, there that the one, you know, the one concrete allegation that I guess plaintiff alleges is the exclamatory statement that my client said, I'm in, I'm in. But at the end of the day, at most, that might be a conversation that would trigger potentially a later consummation of an agreement, but not an actual agreement at that point in time or a promise at that point in time. All right. Thank you. Thank you. Thank you, Judge. Very briefly, I wanted to clarify one of the allegations in the complaint about the undisclosed leverage position. If it's not clear, we think that was a fabrication. And the allegation is that the statement that he, in fact, entered into that leverage position was a fabrication. The next line of the complaint talks about how it just doesn't pass the sniff test. And finally, I did want to mention the quasi-contract claims and also the simple contract theory that was preserved below as a potential means to amend that was presented to this Court. And that would be another avenue for Mr. Tesla to amend his pleadings to satisfy 12e6. All of those theories rest ultimately on the existence of an agreement, right? That's right. Yes. So if we can establish, offer acceptance, meeting of the minds in material terms, intent to be bound, which, you know, we think there are specific facts in this complaint that make out those elements but certainly can bolster those facts in a repleting. I mean, you've had an opportunity, haven't you, twice? So the procedural history here is the first complaint was filed in New York State court, which is a notice pleading jurisdiction, and that pleading was drafted as such. When the case was moved to Federal court, we did amend it before responding to the initial motion to dismiss once. There is a second amended complaint in this case. However, there's a court order from the trial court that says please amend the complaint and add allegations only about diversity as to a new corporate defendant. So there is a second amended complaint. However, our ability to add additional facts to that were strictly limited by the Court's order. Do you think you were precluded from doing anything else? I do, Judge, and I can direct the Court to the section of the… You haven't told us any additional facts in your brief on page 37. You say that you could talk about the common circle in the Brazilian judicial community, where they formed their friendship, the power dynamics that guide their relationships. Those are hardly detailed allegations that we could say, oh, here's how they could overcome the defects, right? You haven't done that. Well, Judge, I believe we're pretty constrained to present new facts to this Court that we didn't present below. If we should have presented additional facts here, that's… No, you haven't really explained to us what you would… You want us to send it back for more briefing, but we don't understand what you would add. You didn't tell the district court what you would add, right? I'm sorry, Your Honor? You didn't, in a motion to amend or as part of your opposition to their motion, say if in the alternative, you know, we have these additional facts that we can add, right? We did not press move to amend. All right. All right. Thank you. We'll reserve decision. Thanks for coming in. Have a good day. Thank you, Judge.